IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
FEB - 4 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN RE: PETER PAUL MITRANO, )
    Debtor. )
                                   )
PETER PAUL MITRANO, )
    Appellant, )  1:12cv1287 (LMB/IDD)
                                    )
  v. )  BK. NO. 11-14531-RGM
                                    )
ROBERT OGDEN TYLER, Chapter 7 )
  Trustee, )
    Appellee. )

## MEMORANDUM OPINION

Before the Court is <u>pro se</u> debtor-appellant Peter Paul Mitrano's ("Mitrano") appeal of several orders of the bankruptcy court and the trustee-appellee's Motion to Dismiss the appeal, included within his responsive brief [Dkt. No. 5]. For the reasons that follow, appellee's motion will be granted and the instant appeal will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

I. BACKGROUND

On May 10, 2010, Mitrano filed a Chapter 13 petition for bankruptcy protection in the Southern District of West Virginia, where he was then incarcerated.[1] The bankruptcy case and related

---

[1] On October 22, 2009, the United States District Court for the District of New Hampshire entered a criminal judgment against Mitrano for willful failure to pay child support in violation of 18 U.S.C. § 228(a)(3). He was sentenced to 24 months imprisonment, 1 year of supervised release, a $100 special assessment, and $517,406.32 in restitution, which is at issue in

adversary proceedings were transferred to the United States Bankruptcy Court for the Eastern District of Virginia on June 21, 2011, and on November 9, 2011, the bankruptcy case was converted from a Chapter 13 to a Chapter 7 proceeding.[2] Appellee Robert Ogden Tyler was subsequently appointed to be the Chapter 7 Trustee of the Mitrano bankruptcy estate.

Among the assets to be administered in that estate were two parcels of real estate, one located at 4912 Oakcrest Drive, Fairfax, Virginia (the "Oakcrest property") and the other located

---

this bankruptcy proceeding. See United States v. Mitrano, No. 1:08cr94, Dkt. No. 132 (D.N.H. Oct. 22, 2009).

[2] Mitrano has extensively appealed both the transfer and the conversion. See Mitrano v. Morris (In re Mitrano), No. 2:11-cv-00455, Dkt. No. 22 (S.D.W.V. May 23, 2012) (dismissing appeal and finding that transfer withstands scrutiny on the merits); Mitrano v. United States (In re Mitrano), No. 1:12cv32, Dkt. No. 26 (E.D. Va. Apr. 16, 2012) (affirming conversion); Mitrano v. Morris (In re Mitrano), No. 12-1989, Dkt. No. 12 (4th Cir. Oct. 17, 2012) (affirming transfer); Mitrano v. United States (In re Mitrano), No. 12-1656, Dkt. No. 5 (4th Cir. June 15, 2012) (dismissing appeal of conversion as improvidently docketed); Mitrano v. Morris (In re Mitrano), No. 12-1989, Dkt. No. 16 (4th Cir. Dec. 3, 2012) (denying motion for rehearing and rehearing en banc on transfer); Mitrano v. Morris (In re Mitrano), No. 12-596 (U.S. Jan. 14, 2013) (denying petition for writ of certiorari on conversion). Despite his lack of success on appeal to date, Mitrano continues to contend that the bankruptcy court for the Eastern District of Virginia and this Court lack subject matter jurisdiction. Appellant's Br. at 1. He has not, however, listed the conversion or transfer as an issue on appeal after twice being warned that continuing to reargue these issues could subject him to sanctions. See Mitrano v. Rjm Acquisitions LLC (In re Mitrano), No. 1:12cv122, Dkt. No. 7 (E.D. Va. July 24, 2012); Mitrano v. Tyler (In re Mitrano), No. 1:12cv1175, Dkt. No. 3 (E.D. Va. Oct. 31, 2012).

2

at 10008 Cotton Farm Road, Fairfax, Virginia (the "Cotton Farm property"). One tenant lived in the Oakcrest property, paying $650 per month in rent, and three tenants, each with an individual tenancy, lived in the Cotton Farm property, paying $650, $750, and $800 per month in rent. Hr'g Tr. at 24:14-15, 30:18-31:17. Although Mitrano collected the rents, he did not give them to the trustee. Id. at 25:11-13, 31:18-23.

On August 20, 2012, the bankruptcy court appointed Gilbert M. Stockton and Coldwell Banker Residential Brokerage as the trustee's real estate agents for the purpose of liquidating these properties over Mitrano's objection.[3] R. at 39. The Oakcrest property was put on the market for nine days, and the Cotton Farm property was put on the market for three days. Hr'g Tr. at 47:18-19, 55:9-16. While the properties were on the market, the real estate agents received several inquiries about them; five offers were made for the Oakcrest property and two offers were made for the Cotton Farm property. Id. at 48:13-16; 49:9-11.

On September 5, 2012, the trustee ratified a $608,000.00 sales contract for the Oakcrest property, a backup offer on the

---

[3] The bankruptcy court denied Mitrano's subsequent motion for reconsideration on September 21, 2012. R. at 103-05. On October 22, 2012, Mitrano filed in this Court a Motion for Leave to Appeal the orders appointing the real estate agent and denying Mitrano's motion for reconsideration; that motion was denied. See Mitrano v. Tyler (In re Mitrano), No. 1:12cv1175, Dkt. No. 3 (E.D. Va. Oct. 31, 2012).

3

Oakcrest property for the same amount, and a $341,500.00 sales contract for the Cotton Farm property. See R. at 53-72 (Oakcrest property sales contract); R. at 80-98 (Cotton Farm property sales contract); Tr. of Oct. 9, 2012 Hr'g ("Hr'g Tr.") [Dkt. No. 2] at 5:12-18 (referencing backup offer); Notice of Appeal [Dkt. No. 1] attach. 8 (Appellee Designation Item 2) (backup offer sales contract). These sale prices were significantly higher than the original offers made on the properties. See Hr'g Tr. at 49:9-12, 48:3-18. The trustee moved for approval of these sales on September 17, 2012. R. at 49-102. Mitrano objected on October 2, 2012. R. at 106-82.

The sales contracts were all contingent on the buyers' satisfaction after inspection of the properties' interiors, which occurred only after the bankruptcy court issued orders compelling access to the properties' interiors on October 4, 2012. See Notice of Appeal [Dkt. No. 1], attachs. 4-5. Based on those inspections, the primary buyer for the Oakcrest property withdrew its offer and the Cotton Farm property buyer requested a $7500 concession, which the trustee accepted, resulting in a sales price of $333,500.00. Hr'g Tr. at 5:9-18, 6:1-4; Notice of Appeal [Dkt. No. 1], attach. 5 (order approving sale of Cotton Farm property).

On October 9, 2012, the bankruptcy court held a hearing on the trustee's motions for approval of the sales of the

properties. Hr'g Tr. at 4:16-20. At that hearing, the court heard evidence of valuation from Alexander Isfahani, one of the Coldwell Banker real estate agents responsible for the sale of these properties. Id. at 44:24-45:6. Mr. Isfahani testified that he had completed appraisals of the two properties at issue and had concluded based on an inspection of only the exterior of the properties that the Oakcrest property was worth at most $630,000 and that the Cotton Farm property was worth at most $350,000. Id. at 46:9-22, 49:6-7. After inspecting the interior of the properties, he testified that the properties' actual value was far less. See id. at 47:3-7; 49:4-18.

Mitrano argued at the hearing that these appraisals significantly undervalued the properties; he contended that the Oakcrest property was worth $900,000 and that the Cotton Farm property was worth $500,000. Hr'g Tr. at 22:18-21, 25:16-18, 30:9, 32:8-10, 33:4-34:17. He disclaimed any expertise on real estate valuation, however, and stated that "I want to stipulate that I'm not in the real estate business. I really don't know what I'm talking about." Id. at 34:18-19. The most recent tax assessments of the properties valued the Oakcrest property at $727,990 and the Cotton Farm property at $388,170, although both properties were assessed at higher values during the height of the market in 2007.

Both properties were encumbered by liens in excess of the proposed sale prices. Although the mortgage on the Cotton Farm property had been fully paid, the Oakcrest property was subject to a $209,333.67 mortgage from J.P. Morgan Chase Bank. R. at 108, 145; Hr'g Tr. at 8:23-9:6, 9:10-13, 31:24-32:5. Fairfax County had liens against each property for past due real property taxes[4] and Fairfax County Water Authority had liens against each property for past due obligations.[5] R. at 109-10, 133-36; Hr'g Tr at 8:8-19, 70:1-9. Additionally, several liens had been recorded in the county land records against both properties, including a judgment for $605.00 from the Fairfax County General District Court in favor of Hickory Farms Community Association, R. at 109-10, 138; Hr'g Tr. at 7:23-8:7, a sanctions judgment for a total of $84,859.80 from the United States District Court for the Eastern District of Virginia, R. at 109, 137, and an IRS lien for $5,775.95, R. at 110.

Far and away the most significant lien on both properties was the child support obligation that Mitrano had been criminally convicted for failing to pay. See supra note 1. The lien had

---

[4] The real property taxes amounted to $7,686.59 on the Oakcrest property and $21,975.93 on the Cotton Farm property. R. at 50, 78, 110, 147.

[5] The liens summed to $121.35 on the Oakcrest property and $273.30 on the Cotton Farm property. R. at 109, 129, 133-36, 146, 170-73.

been entered twice, once directly in favor of Mitrano's ex-wife, Virginia Kelly, in the amount of $418,986.22, and once by the United States in order to satisfy Mitrano's restitution obligation in the amount of $517,481.32. R. at 50-51, 78.

Even after the administrative costs and the taxes associated with the sales were set aside, the proceeds from the proposed sales of the properties were sufficient to repay all of the debts in full except the outstanding child support obligation, which would be only partially satisfied. See Hr'g Tr. at 6:6-18, 8:8-20. Although the child support obligation and restitution judgment would not be fully satisfied by the sale, Ms. Kelly and the United States both consented to the sale and to full repayment of those creditors whose liens had lower priority. See id. at 7:4-19, 59:13-16, 59:22-24, 70:1-9. In fact, Ms. Kelly's attorney told the bankruptcy court that Ms. Kelly was "delighted at the prospect of receiving a substantial payment toward the restitution payments ordered by the Federal Government." Id. at 59:16-18.

Mitrano, a lawyer, nonetheless opposed the sale, arguing primarily that the trustee should first pursue outstanding claims, in particular a claim against Melka Marine that Mitrano contended was for over $600,000 he was owed for attorney's fees.[6]

---

[6] As explained above, Mitrano also contended that the sale prices for the properties were too low. See also R. at 117-18, 154-55.

7

R. at 110-11, 115-16, 147-48, 152-53; Hr'g Tr. at 11:14-21:21, 35:14-22. At the hearing, Mitrano called the trustee as a witness; the trustee testified that he was "in the process of investigating" the Melka Marine claim, but "a lot of work has to be done before we're in a position to know whether or not that claim is collectible." Hr'g Tr. at 62:8-12. Specifically, Mitrano had "signed a release of this claim to Melka Marine," id. at 40:23-41:1, and the trustee testified that he would pursue it "depend[ing] on the efforts made to get around" that release. Id. at 62:5-8. The trustee's strategy was "to pursue all assets pretty much equally at the same time." Id. at 62:24-63:1.

The bankruptcy court approved the sales over Mitrano's objections, finding:

> I don't put any weight on the scheduled values that Mr. Mitrano has suggested at 900,000 and, I think, 500-something on the other. They exceed even the Fairfax County real estate assessed values at the height of the market, and to whatever weight one gives the real estate tax assessments, those were the highest values, and I don't think in the years subsequent to them that one would exceed that in any circumstances on these particular properties.
>
> I do give weight to the realtor, to his analysis of comparable sales in 2012, to the fact that it was marketed, although it was a brief marketing period. There were multiple offers in that time. I give credence based on the photographs and the condition.

---

He further argued that notice of the sale was inadequate. R. at 121-25, 158-60.

8

> The condition is poor, and I think that the trustee in administering them at this time has taken that into account, although it's a recent physical review, the likelihood -- particularly with mold in the property and some of the damages -- that they won't be in better shape tomorrow than they are today, and the likelihood with multiple tenants under "not related" -- under separate leases -- that the properties are not as well-protected as they might be if they were a single family residing in them, taking care of them as one would typically find them.
>
> So I think that the trustee has rightly considered all of those factors in pursuing the assets and an equal value, equal manner to pursue them all simultaneously because of the valuation issues and the depreciation that is obviously undertaken. I accept the values that were brought in for the reasons stated.
>
> [The sale]'s not free and clear of any of the liens, except that of the United States for the criminal restitution lien and to the extent that Ms. Kell[]y has an interest in that, hers. The rest of them will be paid in full. Their consent is immaterial under [11 U.S.C. § ] 363(F).
>
> The court has the authority to sell them if they are paid in full, which is what will happen. To the extent that the Fairfax County Water authorities are subordinate, the government is consenting to them being paid. They are in any event modest -- $551.24. One is almost -- it's hard to tell from this, which is first. One is March. The water authority is April. There may be statutory priorities given to water liens. I have not reviewed that, but they're modest in light of the totality of the circumstances.
>
> The two whose liens are affected have consented to it, and that's satisfactory under 363(F).

Id. at 68:18-70:11; see also Dkt. No. 1, attachs. 4, 5 (orders approving sales). The bankruptcy judge also granted Mitrano's oral motion for a stay pending appeal, but ruled that the stay would go into effect only when Mitrano met two conditions within

9

fourteen days from issuance of the orders approving the sales: (1) he filed a written motion for a stay pending appeal and properly perfected his appeal, and (2) he posted a $400,000 bond. Hr'g Tr. at 71:8-14; R. at 183.

Mitrano met the first condition, R. at 239, and filed an Emergency Motion to Stay Sale of Real Estate requesting that the bond requirement be removed or reduced because he was unable to post a bond for $400,000. See R. at 24; In re Mitrano, No. 11-14531-RGM, Dkt. No. 244 (Bankr. E.D. Va. Oct. 19, 2012). The bankruptcy court denied his motion, observing that "the properties are of deteriorating value due to the physical conditions and use and to the mortgage that is not being serviced," and that "[t]he bond was set to protect against the loss of the properties either physically or by foreclosure and was set in the amount of $400,000 in light of the estimate value available to satisfy the liens of Ms. Kelly and the United States." See R. at 25; In re Mitrano, No. 11-14531-RGM, Dkt. No. 272 (Bankr. E.D. Va. Nov. 2, 2012).

Because the bond was not posted within the required time period, the stay never went into effect; accordingly, the properties were sold and the proceeds were disbursed. See Appellee's Br. at 5; In re Mitrano, No. 11-14531-RGM, Dkt. Nos. 299, 300 (Bankr. E.D. Va. Dec. 10, 2012).

## II. DISCUSSION

Mitrano lists fifteen issues in the instant appeal, many of which are arguments he made in the bankruptcy court when he objected to the sales of the Oakcrest and Cotton Farm properties. See Appellant's Br. at 2-4 ("Issues on Appeal"). Appellee argues not only that the sales were proper, but also that this appeal should be dismissed because the relief sought has been rendered moot by the sale of the properties and the disbursement of the proceeds to the creditors of the bankruptcy estate. See Appellee's Br. at 5, 6.

Mootness in bankruptcy appeals arises in two forms: constitutional mootness, which "is characterized by an _inability_ to alter the outcome," and equitable mootness, which "involves an _unwillingness_ to alter the outcome." Carr v. King, ("In re Carr"), 321 B.R. 702, 705 (E.D. Va. 2005) (quoting In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994)) (internal quotation marks omitted). In other words, "an appeal must be dismissed as [constitutionally] moot when an event occurs while a case is pending appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." Id. at 706 (quoting Church of Scientology v. United States, 506 U.S. 9, 12 (1992)) (internal quotation marks). In contrast, equitable mootness "provides that if, with the passage of time after a judgment in equity and implementation of that judgment, effective

relief becomes, not impossible, but impractical, imprudent, and therefore inequitable, the matter may be dismissed as a matter of equity." Id. (quoting Mac Panel Co. v. Va. Panel Corp., 283 F.3d 622, 625 (4th Cir. 2002)) (internal quotation marks omitted).

The Fourth Circuit has observed that equitable mootness is "[a]pplied principally in bankruptcy proceedings because of the equitable nature of bankruptcy judgments" and "is often invoked when it becomes impractical and imprudent to upset the plan of reorganization at this late date." Mac Panel, 283 F.3d at 625 (quoting In re UNR Indus., 20 F.3d at 769) (internal quotation marks omitted). Moreover, in applying equitable mootness, a court "does not employ rigid rules," but must "determine whether judicial relief on appeal can, as a pragmatic matter, be granted." Id. Specific "[f]actors in making this determination include (1) whether the appellant sought and obtained a stay; (2) whether the . . . equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the . . . equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties." Id.

In In re Carr, the appellant failed to obtain a stay pending appeal and the bankruptcy assets were disbursed according to the bankruptcy court's final order approving a plan of distribution.

321 B.R. at 703. The district court found that the appeal was both constitutionally and equitably moot. Id. at 707. Specifically, it was constitutionally moot because funds had been distributed to the debtor's ex-wife, who was not a party to the appeal and thus could not be ordered to return the funds. See id. at 707 (citing Credit Alliance Corp. v. Dunning-Ray Ins. Agency, Inc. (In re Blumer), 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986)). In addition, it was equitably moot because the four factors articulated by the Fourth Circuit supported the conclusion that "the rights of the parties have been so modified that effective judicial relief is no longer practically available." Id. at 708.

This appeal is analogous to In re Carr and is moot for the same reasons. Although Mitrano acknowledged during the hearing that "once the sale goes through, [the bankruptcy court is] basically unappealable," Hr'g Tr. at 36:9-10, he argues on appeal that any mootness rule "should not apply because Mitrano . . . did in fact seek a stay." Appellant's Reply Br. at 7 (citing In re Kerns, 111 B.R. 777, 783 (S.D. Ind. 1990)). In In re Kerns, the case cited by Mitrano, the debtor's motion for a stay pending appeal was denied by the bankruptcy court. See 111 B.R. at 780. Here, in contrast, the bankruptcy court granted Mitrano's motion for a stay pending appeal but imposed conditions that Mitrano failed to meet.

13

More importantly, In re Kerns is distinguishable because "the parties to the sale of the [real estate] had expressly provided for return of the purchase price upon culmination of the appeal in the Debtor's favor," and accordingly the court was "capable of restoring the parties to their original positions such that the appeal [was] not moot." 111 B.R. at 781-82. No similar provision appears in the sales contracts for the Oakcrest or Cotton Farm properties. See Dkt. No. 1, attachs. 8, 9 (sales contracts). Accordingly, this Court finds that Mitrano's appeal is both constitutionally and equitably moot.

Mitrano attempts to avoid this conclusion by relying on 11 U.S.C. § 363(m), arguing that there "is no finding of good faith in the sales orders for the sale of Mitrano's real properties," and therefore the appeal is not moot under that statute. Appellant's Reply Br. at 6-10. This argument fails, however, because the Court's ruling is not premised on statutory mootness under § 363(m) but on constitutional and equitable considerations.[7]

---

[7] Because this appeal is constitutionally and equitably moot, it is not necessary to decide the merits of the other issues raised by Mitrano in this appeal; however, having reviewed the record, the Court finds that the actions taken by the trustee and by the bankruptcy court were eminently reasonable.

14

## III. CONCLUSION

For the reasons stated above, this appeal will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 4th day of February, 2013.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge

15